The Honorable, the Judges of the United States Court of Appeals for the 8th Circuit. Hear ye, hear ye, hear ye. The United States Court of Appeals for the 8th Circuit is now in session. All persons having business before this Honorable Court may now draw near and they will be heard. God save the United States and this Honorable Court. Alright, good morning to everyone. Thank you for joining us here by video conference. Madam Clerk, would you please call the case for argument. Case number 21-3149 from Western Missouri, United States v. Felix Forjan. Alright, Mr. Falvey, we'll hear from you first. Thank you, Your Honor, and may it please the Court. Good morning, my name is Jim Falvey and I represent the defendant, Felix Forjan. Initially, I would just like to thank the Court for rearranging the schedule based on my illness last week. There certainly seemed to be a lot of things going around this time of year, but I really appreciate that. So, we have raised two issues for the Court today to consider. The first is whether the District Court erred in denying Mr. Forjan's motion to suppress the drugs that were found in this case. And I'll go back to this discussion. And then the second issue is whether Mr. Forjan's plea was knowing involuntary under Boykin v. Alabama, etc. As to the motion to suppress, there's issues within this. First of all, whether there was an objective belief for a police officer to pull over Mr. Forjan's truck. And secondly, whether there was probable cause in this matter to do a full search of his truck after he had pulled it over. There are a couple of reasons that the Police and the Government offered for the reasonable suspicion. Essentially, what I still refer to as a Terry stop, but I know it's evolved quite a bit since then. The objective belief, they argue, is based on, first, the fact that Mr. Forjan's truck was found at a house that was being monitored for drug activity. It's not clear that, actually, it was being initially monitored by the Springfield Police as to whether this house was part of a drug conspiracy to distribute methamphetamine. The informant in the case provided the Government with knowledge that this might be a house where drugs were stored. But the Government did not have any evidence that the drugs had been sold out of this facility or actually saw any drugs coming or going. There was activity, certainly, with a number of cars coming and going, but there could have been many reasons for that. When the officer, Copley, saw Mr. Forjan's truck, it's a flatbed pickup, and the truck took off after being there approximately 30 minutes, he called ahead to a deputy, Hook, and indicated to him that he should stop, pull over the truck because he believed that it had been at this house. Deputy Hook, aside from receiving that information from Officer Copley, also saw a sticker on the license plate which Deputy Hook believed demonstrated that the vehicle was not properly registered. Would the District Court make any findings of fact with regard to whether the local licensing office made a mistake as to the color of the sticker that they gave to Mr. Forjan for his truck? I don't believe they did. What they said is the officer indicated that, I'm sorry, the court found that it was a proper, that the detective, I'm sorry, Deputy Hook made a mistake as to the sticker. In that it was a valid sticker. What I'm trying to find out is whether the sticker was the proper color for a commercial vehicle, or whether it was a mistake. My understanding is that it was not a mistake, that that was the proper color for this particular vehicle, and that was black. With respect, and sort of adding on to that point, that there's only a requirement in Missouri with respect to trucks of this size that the license plates only need to be on the front. Which is interesting as to how Deputy Hook was able to see the license and the sticker so quickly and make a determination that it was out of time, that the registration had passed. And the issue is, you likely know, whether it was a December sticker, and the date was December 16th, I believe, in two, sorry, I have my notes here. Yeah, December 10th, 2016, the sticker expired, it said in December. And the question, and this has been an ongoing issue not only in Missouri but in other states, does that mean that the tag expires at the end of December, in other words January 1st, or whether it expires December 1st? In this case, it's the law as to this particular registration that it expired at the end of December. Did I answer your question, Judge? Yes, I was just trying to see if the color of the sticker could have caused the officer to make a reasonable mistake, that was my question. Yes, and they, the court found... What's your answer to the question? My recollection is that it wasn't, that it was the proper color for this time, but the magistrate and the district court found that it was a reasonable mistake. We know what the courts found, I guess I was asking whether you have a position on it. I do, and I believe that Officer Hook, Deputy Hook made a mistake that was not reasonable. He is trained in this area of law, he's on the streets regularly, he wasn't a rookie, he had had substantial experience, and I realize the standard in this case as to whether the error is reasonable is whether Deputy Hook, whether he made a reasonable decision for a police officer. It's an objective standard. Does that answer your question, Your Honor? Well, I understand what you're saying. I did have one question back on the reasonable suspicion issue. Sure. If you don't mind my going back to that. Not at all. We have this case called U.S. v. Buchanan, which is cited in the Collins case, which the Collins case was discussed by the parties for some reason, Buchanan not so much, but in that case, as you may know, the court said that where a guy had visited the house of a known drug seller, went in with a baby and a diaper bag, and came out a short time later carrying the bag, that there was not only reasonable suspicion, but there was probable cause to stop him because his visit to the house, quote, conformed to the patterns of the drug trade, unquote. And so my question is, does Buchanan support at least the view that there was reasonable suspicion here, if not probable cause, on the view that a man coming to a house that's reported to be a drug distributor's location, parking in the driveway, leaving the lights on in his vehicle, and then leaving, is that sufficient to at least be reasonable suspicion? Would you like to address that? Sure. I would say it's not. In this case, I mean, there's certainly indicia of various activity going on with respect to, as your honor pointed out, cars come and go, and he left the truck in the driveway with the lights on, as you said. But my recollection is that he was there for about 30 minutes. Typically, in the drug cases that I reviewed prior to today, the transactions are very quick, and that is what a number of courts have looked at to find reasonable suspicion or probable cause. But I believe it gets to be a slippery slope at what point, you know, do we have individuals, you know, if someone is running a business, an eBay business or something, out of their house, and lots of cars are coming and going, it could be, with a decision saying that that is a factor in determining if drug activity is going on, that can be misused in a way that the eBay business or some other type of perfectly innocent business is ongoing. And I realize there's more in this case than just observing cars coming and going, that he did have an informant, but the informant was unable to say that, you know, drugs had ever been sold there. Counsel, did anyone, did law enforcement observe Mr. Forgeon go into the house? No, they didn't. So how does that play into this possible scenario and the similarity with the case that Judge Colleton described? Right. I do see I'm running low on my time for rebuttal. Well, I think you should answer Judge Shepard's questions and we'll take up rebuttal time later. Thank you. Judge Shepard, I believe that cuts in favor of Mr. Forgeon because, again, Officer Copley came back and saw a motorcycle and Mr. Forgeon's truck parked in the driveway, and he had no idea when they had arrived. He didn't know how many people had gone in. So I think it adds another cloud to the facts in terms of whether, you know, this gave him reasonable suspicion or probable cause. So if I can stop here, I'll save at least a minute for rebuttal. Very well, you may. Thank you for your argument. Thank you, Your Honor. Mr. Wagner, we'll hear from you. Good morning and may it please the court. David Wagner for the United States. I'll pick up with the reasonable suspicion issue where the court just left off. And I think the Buchanan case, Judge Colleton, certainly sounds helpful for our position, particularly when viewed alongside the Saines case, which which we discuss in our brief. And I think those cases take take the appropriate view of reasonable suspicion, which is it's a particularized and objective basis for suspecting a person of criminal activity more than a hunch. But it's not probable cause. It's considerably less than a preponderance of the evidence. It's just enough suspicion of suspicion of criminal activity to justify an investigative stop, a brief stop to investigate further to determine whether, in fact, there is evidence of criminal activity. So I'd like to focus on a word that you've used there, and that is the word particularized. And that's where I'm having some difficulty seeing how there was particularized facts, creating reasonable suspicion as to Mr. Forjan with regard to the Nixa house visit. The particularized the particularization, if that's a word, is due to his association with this house. Certainly, there was no indication that that of who they didn't even know who he was, who was driving the truck. They didn't they didn't have any reason to suspect him as an individual of criminal activity. But they did have a link between him and the house, and they also knew not only was he at the house, the truck that he left in had its lights on, and it was one of multiple vehicles going to that house, which belonged or at least was the residence of a suspected drug dealer. And on that particular day, there are multiple vehicles visiting the house, including Mr. Forjan's vehicle. So it's his association with the house and the truck's lights being left on. The totality of the circumstances gave them a particularized basis that the driver of that truck was engaged in drug dealing. So but in order to rely on the cases where brief lunch, short visits to houses may create reasonable suspicion, wouldn't the officer have to have known when he went in? I don't think so. I think the officer knew that the truck's lights were on. The officer testified that the truck was there for about 45 minutes to an hour. I think the officer could reasonably infer that the same person who drove away from the house is the person who had driven to the house and left the truck's lights on. But I think he just told me that the officer knew that he was there 45 minutes to an hour. So that wouldn't be a short time. It wasn't a short time, but the officer explained how in the case of transactions of large quantities of drugs, it's in his experience and in his training, those transactions can take longer than short visits. So he suspected there may have been a transaction of a considerable quantity of drugs involved. So a visit to a suspected drug house for any length of time creates reasonable suspicion. I wouldn't go so far as to say that. I think, again, it's a totality of the circumstances analysis. I think if there's no indication on one particular day of multiple vehicles coming and going, maybe one vehicle showing up, maybe that's not enough. But that's not what we have here. We have multiple vehicles around the same period of time. And also, just before the officers followed and stopped 4Jan's truck, they had followed another vehicle leaving the house. And the officer testified about how the actions of that driver made him think they ultimately weren't able to stop the prior truck, but the officer testified how the actions of that driver made him think that the driver was trying to evade them in some way, or at least was aware that he or she was being surveilled. Again, it's a totality of the circumstances inquiry, and that's one of the considerations that supports suspicion. I would also note that in the Sains case, I believe the officers there pulled over a blue pickup truck that had come into a garage for half an hour before leaving. And this court found that there was sufficient suspicion in that case for a Terry stop. So it doesn't necessarily have to be just a brief visit. Again, it's everything considered in their totality. So in those other cases, was there evidence or testimony regarding drug transactions? It's my understanding that Mr. Baldy says in this case, the informant was not able to say whether drug transactions had actually taken place. Well, that's correct. Not at the house in particular. But there was no evidence, at least based on this court's opinion in the Sains case, that there were drug transactions at that house either. There, what the officers were going on was the fact that the resident of the house had sent a wire transfer, I believe, two months prior to an individual, Melissa Sains. And then they learned from an informant that Melissa and her brother were in town and then observed a blue pickup truck pull into a garage, leave 30 minutes later. I think it left on a known drug route. Let's talk about this case. What was the evidence that they knew suggesting that the resident was a drug dealer? Well, they had a confidential informant who told them that the resident was supplying pound levels of methamphetamine to another known drug dealer in Springfield. They had surveilled the house five to ten times over a period of six months and seen multiple vehicles coming and going. The officer conducting the surveillance had seen two individuals who he described as targets in drug investigations at the Nixa house. He had observed the Springfield drug dealer at the Nixa house, as well as observing the resident of the Nixa house at the house of the Springfield drug dealer. I referenced earlier how one vehicle he followed, he thought, was keen to their surveillance. I think that pretty much covers it. I have one other factual question on this matter of whether Forjan was seen going in and out of the house. This officer, Copley, at one point was asked a question, and you said that you observed the driver of the white truck exit that vehicle and walk west to the home. The answer, well, he walked east to the trailer, yes. Now, did Copley see him leave the truck and walk to the trailer, or did they arrive after the driver had entered the trailer? Well, I struggled with that issue a little bit, too. The passage you just referred to indicates that he saw him enter the trailer. On the other hand, in fairness, the magistrate, I believe, did find that he didn't see him enter the trailer, and I'm not sure I could quite say that that's clearly erroneous based on that testimony. So it's a little bit unclear to me as well, Judge Gallatin. Well, what about the district court? Did the district court make a finding on it? You mentioned the magistrate, Judge, but, of course, the district court made the ultimate order. Yeah, that's right. I think the district court adopted that portion of the magistrate's R&R, if I recollect correctly. Mr. Wagner, I'd like to turn to the traffic stop, if I could. Of course. And with regard to the objective reasonableness of the mistake by Deputy Cook, and this is my question, why doesn't the fact that the license plate number 21B1HZ did not start with the letter signifying the month of expiration, why doesn't that undercut the reasonableness of any mistake about the vehicle having an expired registration? Well, it's certainly an indication that that vehicle was not registered on a monthly series basis, and I would agree with that, Judge Draghi. It's not just an indication. I mean, that's a fact under Missouri law, isn't it? Well, Missouri, the statute certainly doesn't describe how the letters and numbers should appear on the plate, but I do understand that the way that this plate was configured, starting with two numbers, indicated it wasn't a monthly series vehicle. However, the officer only saw that plate for a brief amount of time, because it was on the front when the cars met each other. Well, but yeah, the officer saw two other things, one being that there was only a plate on the front, which indicates it's a commercial vehicle, and the third thing he saw was it was a flatbed pickup truck. Yeah. So he had at least three things telling him that this was a commercial vehicle whose registration does not expire on a monthly basis. Yeah, those were all indications for sure. But again, he focused on the color of the sticker, and the standard is not whether... Well, so going back to my question to Mr. Falvey, was the color mistaken? His answer was that it was not mistaken, it was the proper color. Well, the district court thought that it was a mistake, that the sticker should have been for 2017, not for 2016. What about the color? Well, the color for 2017 would have been a different color, it wouldn't have been black. Was there a factual finding on that? Why would it be a different color if it was properly registered? Well, the color for each year would be different, so the color for 2017 would be different than the color for 2016. But it wasn't expired yet. I have to confess, I don't exactly know why the district court found that it should have been a 2017 sticker rather than a 2016 sticker. I think what I'd say about that is the officer's focus was the color of the sticker, all he needed was reasonable suspicion, and based on the color of the sticker, I think he had reasonable suspicion to investigate further, to determine whether this was in fact a commercial vehicle or not. But the test is whether his mistake was objectively reasonable. So, other than his subjective beliefs, what objective criteria can we look to to show that his mistake was reasonable? It's really the color of the sticker. And the fact that, you know, the standard for commercial vehicles versus non-commercial vehicles isn't whether it has a flatbed or not, it's the use of the vehicle. The vehicles up to 12,000 pounds are registered on a monthly series basis like non-commercial vehicles. But those vehicles would have plates on the rear. They would, but it's possible that a commercial vehicle would just be missing the plate on the rear, and that would be another violation. So, I don't think that's determinative. I don't disagree, Judge Graza, that the reasonable mistake argument is not our strongest argument. I think the color of the sticker is enough, but with the time I have left, I would like to turn to the attenuation argument, because I think that wasn't raised below, but this court reviews judgments, not orders, and so the court can reach that argument. And here, the key is the fact that once the officer pulled over the truck, he found that 4Gen neither had a driver's license nor proof of insurance. And once he found that, that discovery was an intervening circumstance that broke the causal chain between the stop and between the discovery of the drugs. It's similar to the warrant in the Strieff case, in that once the officer found 4Gen was not allowed to be on the road, and in fact, his driver's license had been expired since 2011. He wasn't just driving around, you know, forgetting to bring his license. He was categorically barred from being on the road. And once the officer found that, he was entitled to arrest 4Gen, and he said he would have arrested 4Gen for that violation. At that point, the truck needed to be inventoried and towed, and the drugs would have been discovered. So that break in the causal chain, the discovery of the lack of a license and the lack of valid proof of registration, really means that the interest that would be served by suppressing the evidence is no longer there, because there was an independent reason for arresting 4Gen, again, similar to the warrant in Strieff. The plan in Strieff was the stop, a but-for cause of the officers learning about the warrant? Sure, because otherwise the officer didn't know who the individual was, so he wouldn't have been able to find out that there was a warrant for his arrest. So you mean he stopped the man in Strieff and then ran a check on him and found out that there was a warrant? Yes, that's my recollection. So that's similar here, where he stopped 4Gen and then learned, after he found out who 4Gen was, learned that he had no license, he verified that with the dispatch, and also learned that he had no valid proof of insurance. So I don't think it's a but-for cause analysis, it's really almost more of a proximate cause analysis. The attenuation doctrine, as I understand it, at least. What do you mean by that? Well, because even if the discovery of the independent reason, even if the constitutional violation was a but-for cause, the attenuation doctrine still comes into play and severs the causal chain, sort of like approximate cause, considerations of proximate cause. And I think, you know, I only have a few seconds left, so I'd like to just say that the suppression, the exclusionary rule is really a deterrence-focused rule, and this ties the exclusionary rule with the attenuation doctrine, for which the most important consideration is whether there's purposeful or flagrant misconduct. There was no purposeful or flagrant misconduct here. Both of the officers involved thought there were legitimate reasons for the traffic stop, and so even to the extent they were wrong, the attenuation doctrine should mean that the evidence should not be suppressed. I do see that I'm out of time, so unless there are any further questions, I would ask the court to affirm. All right, thank you for your argument. Mr. Falvey, we'll hear from you in a moment. Thank you, Your Honor. Just picking up where counsel left off on the attenuation doctrine, to me, it's close to the concept of inevitable discovery, and that argument is entirely dependent on having the truck being pulled over so that the officer could run a check on Mr. Forjan. We would have never gotten there if there wasn't probable cause or reasonable suspicion to pull the car over in the first place, and... But he says streaf is the same in the sense that but for the pullover, they wouldn't have run the check to see that there was a warrant for the man. Do you see a distinction there? I do agree that it is a but for analysis, and that it... I'm trying to think. Sorry. That the car shouldn't have been pulled over based on reasonable suspicion or probable cause, and therefore, the issue of the lack of a license and insurance would never have been discovered by the police, at least in this particular situation on this day at that time. So it... We don't even get to attenuation or inevitable discovery and an opportunity to break the chain because the chain wasn't even put together in our argument with respect to reasonable suspicion. And I don't see the clock, but I'm pretty sure I'm out of time. Yes, your time has expired. Thank you for your rebuttal argument. Thank you to both counsel. The case is submitted and the court will file a decision in due course. Thank you.